# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| James Spratt (B-37305), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 C 50085 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| Ronald Rangel, Corr. Officer, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Rangel's motion for summary judgment [18] is denied.

## STATEMENT

Plaintiff James Spratt, a prisoner at Dixon Correctional Center ("Dixon"), brought this civil rights lawsuit under 42 U.S.C. § 1983. Defendant Correctional Officer Ronald Rangel moves for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies [18]. For the reasons stated below, the Court denies Defendant's motion [18].

## I.   INTRODUCTION

In April 2019, Plaintiff filed this lawsuit against three Illinois Department of Corrections ("IDOC") officials at Dixon, alleging unconstitutional conditions of confinement and deliberate indifference to his serious medical needs. *See* [1]. In his complaint, Plaintiff, who is a prisoner at Dixon, alleged that on November 7, 2018, he was moved to housing unit 28/room 47, which was "infested" with bugs. *Id.* at 6. Plaintiff claimed that, upon entering the room and seeing the bugs, he asked C/O Ronald Rangel if he could be moved to another room; Rangel denied his request. *Id.* Plaintiff claimed that, on November 7, 2018, he asked C/O Rangel "to put in a request to sanitation/maintenance to have room 47 sprayed[.]" *Id.* Plaintiff claimed that he sent several requests to "sanitation/maintenance" to have the room sprayed but nothing was done. *Id.* Plaintiff claimed that, on November 14, 2018, he asked C/O Rangel again if he could be moved to another room or if C/O Rangel could put in another work order to have his room sprayed. *Id.* at 7. Plaintiff claimed that C/O Rangel became upset and told Plaintiff that he was "sick of Plaintiff bitching about having his room sprayed and if Plaintiff ask[ed] him again that he will write an inmate disciplinary report and have Plaintiff put in segregation." *Id.* Plaintiff

claimed that, on November 19, 2018, he felt a sharp pain in his left ear and filed a request for a sick call. *Id.* Plaintiff claimed that, on November 25, 2018, he was "called to sick call." *Id.* Plaintiff claimed that later that day, he was sent to the healthcare unit and a bug was "flushed" from his left ear. *Id.* Plaintiff claimed that his room was sprayed on November 21, 2018. *Id.* Plaintiff named as Defendants John Varga, Amber Allen, and Officer Rangel. *Id.* at 1.

In an order dated July 18, 2019, the Court found that Plaintiff's allegations about the "bug infestation" in "room 47" were sufficient to state an Eighth Amendment conditions claim against Officer Rangel. [10] at 3. The Court dismissed all other claims and Defendants. *Id.* at 4–5.

On December 2, 2019, Defendant Officer Rangel filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. *See* [18].

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court must construe all facts in the light most favorable to the nonmoving party and resolve all doubts in favor of that party. *Id.*

## III. ANALYSIS

Pursuant to the Prison Litigation Reform Act, no action shall be "brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "is 'mandatory'" and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). To exhaust administrative remedies, an inmate must use "'all steps that the agency holds out,' and he must 'do[ ] so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)); *see Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (prisoner fulfills duty to exhaust remedies by adhering to the specific procedures and deadlines in the facility's policies). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Here, the parties do not dispute that Plaintiff completed the IDOC's grievance process, *see* [19] at 1; [20] at 3, ¶ 15; [23] at 2, but Defendant argues that Plaintiff's grievance lacks the requisite specificity. The Illinois Administrative Code also outlines the required procedures for inmate grievances. *See* 20 Ill. Admin. Code § 504.800 *et seq.* [20] at ¶ 8. Defendant contends that Plaintiff failed to comply with the Illinois Administrative Code's requirement that he include in his grievance: "the name of each person who is subject of or who is otherwise involved in the complaint" or "as much descriptive information about the individual as possible." 20 Ill. Admin. Code §504.810(c). *See* [19] at 1. The grievance form Plaintiff used incorporates this requirement; it directs the grievant to provide "information including a description of what happened, when and where it happened, and the name or identifying information for each person involved." [20] at ¶ 16.

The evidence before this Court shows that Plaintiff wrote one grievance (dated November 26, 2016) relevant to the claim in the instant suit. *Id.* at ¶ 11. The counselor received the grievance on November 28, 2018, and returned it to Plaintiff on November 30, 2018, noting that "[s]taff discipline is an administrative decision and not a matter of inmate preference." *Id.* at ¶ 12. Plaintiff submitted the grievance to the facility Grievance Officer ("GO"), who received it on December 6, 2018. The GO reviewed Plaintiff's grievance on February 4, 2019 and advised Plaintiff to "address their concerns with the assigned staff" and that medical treatment is "not a matter of inmate preference." The Chief Administrative Officer ("CAO") concurred with the GO's recommendation on February 7, 2019. Plaintiff appealed to the ARB on February 4, 2019. *Id.* at ¶ 13. The ARB received the grievance on February 15, 2019 and, that same day, ruled that the office "cannot establish deliberate staff misconduct." *Id.* at ¶ 14.

Although Plaintiff's grievance could have been worded in a more artful manner, the Court finds that he adequately completed the grievance process as to Officer Rangel based upon the undisputed portions of the record. Plaintiff's grievance stated, exactly and in its entirety, as follows:

> Im writing this grievance because on (11-7-18) I was moved from unit 29 to unit 28 Rm 47 upon arriving I notice Rm 47 had a lot of bugs on the wall I made a request to the C/O to put in a work order to have the room sprayed on (11-8-18) I put in another work order and (11-14-18) I put in another work order to have my room sprayed for bugs. On (11-19-18) I put in a sick call request because of pain I was having in my left ear on (11-21-18) my room was finally sprayed and I was called to sick call on (11-25-18) and a bug was flushed out of my left ear. So for a whole week a bug was inside my ear and I got no medical help for a week I would like the maintenance crew in charge of spraying rooms suspended for taking over two weeks to spray my room. And the nurse who makes the passes for sick call also suspended because it took a week

3

to be called for medical help when I made it clear that I was having
serious ear pain

[20-3] at 5–6; [23] at 11.

Though not a model of clarity, Plaintiff's grievance can reasonably be read to
complain about the bug issue in his cell. It can also reasonably be read to state that
Plaintiff complained to the same correctional officer on duty in unit 28 (on November
7, 2018, November 8, 2018, and November 14, 2018) about the bug issue, and that
this correctional officer failed to adequately address the issue (by following up with
maintenance staff to have the room sprayed in a timely manner). And, a fair reading
of the grievance shows that Plaintiff sought to place the matter in context by
explaining the steps he took to have the bug issue remedied.

As Defendant points out, Plaintiff's grievance is ambiguous in some respects.
For instance, Defendant, highlighting the lack of punctuation in Plaintiff's grievance,
suggests that Plaintiff may have asked multiple correctional officers for work orders,
as opposed to asking the same officer multiple times. *See* [24] at 3. But, the grievance
documentation in the record shows that, despite these ambiguities, the prison
administration understood the focal point of Plaintiff's grievance to be a complaint
about the conditions (bugs) in his cell and the manner in which prison personnel were
(or were not) responding to the issue. This is evident from the fact that Plaintiff's
grievance was specifically categorized as a conditions issue. [20-3] at 2–4. It is also
evident from the fact that Plaintiff's grievance was substantively addressed at each
level of the administrative process and ultimately resolved with a finding of no
"deliberate staff misconduct." *See id.* at 3. Although Plaintiff's grievance could have
provided additional details and been worded in a less confusing way, it included
enough specificity about the bug issue—as well as the staff involved with that
particular issue—for the prison administration to conduct an investigation.

Additionally, the Supreme Court has held that exhaustion is not inadequate
under the PLRA merely because "an individual later sued was not named in the
grievances." *Jones*, 549 U.S. 199 at 219. Here, Plaintiff explains in his response to
the summary judgment motion that he did not specifically refer to Officer Rangel by
name in the grievance because, at that time, he did not know the officer's name. [23]
at 2–5. His response also indicates that he took steps to identify the unknown officer
(and eventually did identify him). *Id.* at 4. Notably, Defendant does not argue or
point to any IDOC requirement (or other legal authority) suggesting that a prisoner
should (or must) amend his grievance to include the name of an unknown staff
member.

In this case, Plaintiff's grievance adequately put the prison administration on
notice of Plaintiff's concerns (related to the bug issue) and the particular staff
involved with that issue, and no one rejected Plaintiff's grievance—at any level of the

4

administrative review process—for failing to identify a particular individual or staff member. *See Maddox*, 655 F.3d 709 at 721 (7th Cir. 2011) (rejecting argument that the plaintiff failed to exhaust his administrative remedies because he did not name or describe the defendants in his grievance where grievance was rejected on the merits at every stage of review without any indication it was procedurally deficient).

Moreover, Defendant's authority on the grievance specificity issue, *Ambrose v. Godinez*, 510 Fed. App'x. 470 (7th Cir. 2013) and *Flemming v. Shah*, 2013 WL 3033102 (S.D. Ill. June 17, 2013), *see* [19] at 6–8, is inapposite. In *Ambrose*, the Seventh Circuit affirmed the dismissal of three of the IDOC defendants in the case due to the plaintiff's failure to exhaust administrative remedies. *Ambrose*, 510 Fed. App'x. at 472. In so doing, the Court noted that the complaint lacked sufficient information to identify the defendants "by name or inference." *Id.* Plaintiff's complaint, in contrast, complains about the poor conditions of his cell and implicates various prison personnel, including what could fairly be read to be the same "C/O" (whose identity simply seems to have been unknown to Plaintiff at the time he filed the grievance). In *Flemming* the plaintiff sued the prison physician and the prison health care unit administrator ("HCUA"), and the court dismissed the HCUA for lack of exhaustion. *Flemming*, 2013 WL 3033102 at *2. In doing so, the court noted that the grievance never mentioned the HCUA but was specifically directed at the prison physician only. *Id.* at 3. Here, Plaintiff's grievance highlights the steps that he took to remedy the bug problem and can fairly be read to suggest that he complained about the bug problem to the same correctional officer on three different dates and that this officer failed to adequately address the bug issue with the maintenance staff.

To be sure, Plaintiff's grievance could have been clearer as to the particular officer involved. But, an inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d 709 at 722 (citing *Jones*, 549 U.S. 199 at 219); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)); *see also Trimble v. Grounds*, 2016 WL 7337956, at *2 (S.D. Ill. 2016) (a grievance need not be "a model of clarity and specificity; it is not a summons and complaint that initiates adversarial litigation.").

## IV.    CONCLUSION

For the reasons explained, the Court denied Defendant Rangel's motion for summary judgment [18].

Dated:  April 16, 2020                    Entered:

John Robert Blakey
United States District Judge